**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | |
|---|---|
| SAP SE and SAP AMERICA, INC., ) | **DOCUMENT** |
| ) | **ELECTRONICALLY FILED** |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | FILE NO._____ |
| INFOSYS LIMITED, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

---

**COMPLAINT**

Plaintiffs SAP SE and SAP America, Inc. (collectively, "SAP" or "Plaintiffs"), by

their undersigned attorneys, for their complaint against Defendant Infosys Limited ("Infosys" or

"Defendant"), allege as follows:

**PRELIMINARY STATEMENT**

1.      This is an action brought by SAP, the market leader in enterprise application

software, against Defendant, a competing technology services and consulting company, arising

out of Defendant's infringing use of MANA, a deliberate imitation of SAP's HANA Marks, for

overlapping and related products and services.  On August 29, 2016, a court in Germany, where

Plaintiff SAP SE is headquartered, issued a temporary injunction prohibiting Defendant from

using the MANA mark within the European Union.  Plaintiffs bring this action seeking relief

against Defendant's actual and intended use of that same mark in the United States.

2.      SAP's primary business is providing computer software platforms, and

consulting services involving those platforms, to its customers.  SAP helps its customers manage

their business operations, streamline their computer data and cloud storage processes, and

1

increase the overall reliability, speed, and efficiency at which their computer systems and networks operate and analyze data. Almost all sophisticated companies, such as SAP customers ConAgra Foods, Inc. and The Boeing Company, based in Illinois, now have large, complex computer data storage systems and networks; companies like SAP are essential to developing and maintaining the reliability of their systems.

3.      From 2008 to 2010, SAP developed a groundbreaking new technology, an "in-memory" relational database management system that could be implemented with SAP's principal software platform. This technology, named HANA, was a game-changer in the field, resulting in computer systems that could operate magnitudes faster than previous systems. To capitalize on this discovery, SAP redirected its business operations and software platform to focus on its HANA platform, which has been used by almost 10,000 customers and startup companies to date.

4.      Since at least as early as 2011, SAP has used its HANA Marks in connection with its principal platform and related products and services, and the advertising, marketing, and sale of those products and services, in the United States and throughout the world. Over the last five years, SAP has invested about $2 billion per year worldwide in research and development, a significant portion of which was spent on HANA-related products and services. Over the same time period, SAP has substantially increased its global revenue to over $20 billion in 2015 ($6.7 billion in the U.S. alone), driven in substantial part by HANA-related products and services. SAP has described the company as "powered" by HANA, and its launch was one of the most important in SAP's recent history.

5.      In May 2014, SAP's then-Chief Technology Officer, Dr. Vishal Sikka, resigned from SAP and one month later became the CEO of Defendant. Dr. Sikka had been a part of the

team that developed HANA and was intimately familiar with its technology, marketing, and branding strategy. After he departed, Defendant actively recruited a number of high-level executives from SAP.

6.     Several months ago, Defendant, with Dr. Sikka at the helm, announced that it was in the process of launching and promoting "a knowledge-based artificial intelligence platform" named MANA. In fact, Dr. Sikka, with full knowledge of SAP's HANA technology and branding strategy from his days as SAP's CTO, has been personally involved in the launch and promotion of Defendant's MANA platform. Defendant further has stated its intent to market MANA as Defendant's new flagship enterprise platform to all of its existing customers, including companies that also are customers of SAP, by promoting MANA as a product that can be integrated with, and will allegedly improve the performance of, SAP's HANA. Many of Defendant's customers are located in this district and, upon information and belief, Defendant is in the process of implementing MANA with at least its largest customers at this time, including customers headquartered in this district, such as ConAgra Foods, Inc. and Kraft Foods Group, Inc.

7.     Defendant's unauthorized use of MANA, an imitation of SAP's well-known, registered HANA Marks, in connection with its competing computer software products and services (in particular, business software for analysis and interpretation of business data), and the advertising, promotion, and sale of those products and services, is likely to cause and is causing, in this district and elsewhere, confusion among relevant consumers, and irreparable injury to Plaintiffs, and will continue to do so unless and until it is enjoined. The likelihood of such confusion is heightened because Defendant explicitly refers to SAP and its HANA Marks in Defendant's advertising. Moreover, Defendant knows full well that its conduct will cause

confusion with SAP's HANA Marks and injury to SAP, and seeks to benefit from that confusion and injury.

8.     Accordingly, Plaintiffs bring claims against Defendant for willful trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair methods of competition and deceptive business practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*; and palming off and unfair competition under Illinois common law.

## PARTIES

9.     Plaintiff SAP SE is a German corporation with its global headquarters located at Dietmar-Hopp-Allee 16, 69190, Walldorf, Germany.

10.     Plaintiff SAP America, Inc., a subsidiary of SAP SE, is a Delaware Corporation with its U.S. headquarters located at 3999 West Chester Pike, Newtown Square, PA 19073, and with multiple subsidiary companies involved in the business of selling goods and services under the HANA Marks, several offices and laboratories, and large corporate customers all located in this district.

11.     Upon information and belief, Defendant Infosys Limited is an Indian Corporation with its global headquarters at Electronics City, Hosur Road, Bengaluru 560 100, India, and with an office and multiple customers located in this district.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338 and 1367, and 15 U.S.C. § 1121.

13.     This Court has personal jurisdiction over Defendant because, among other reasons, it has a place of business in this state, and this action arises out of Defendant's conduct in this state.

14.     This judicial district is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

*Plaintiffs and Their Rights in the HANA Marks*

15.     From 2008 to 2010, SAP developed a groundbreaking "in-memory" database analytics technology for use in its enterprise platforms.  It named this technology HANA, and began selling products and services using marks consisting of or including HANA (collectively the "HANA Marks") in the United States by at least as early as April 2011.

16.     As a result of SAP's long and exclusive use of its HANA Marks for and in connection with its database management and data analytics products and services, those marks have become well-known and distinctive among relevant consumers in the U.S. and worldwide. In addition to the $2 billion dollars per year SAP invests globally in research and development for all of its technological platforms, SAP has spent tens of millions of dollars to advertise its HANA Marks and products in the U.S. and worldwide, and as a result has successfully increased its global revenue to over $20 billion dollars ($6.7 billion in the U.S. alone); these revenues are driven significantly by sales of its products and services in connection with the HANA Marks.

17.     In addition to the strong common law rights in its HANA Marks that SAP has acquired through the use of those marks in U.S. commerce in connection with its products and services, those marks are the subject of the following U.S. registrations owned by SAP SE:

- U.S. Reg. No. 4,989,312 for HANA, filed September 18, 2014 and registered June 28, 2016 based on use and use in commerce since May 2011, for computer programs and software, database management services, and software development services.

- U.S. Reg. No. 4,182,072 for SAP HANA, filed July 18, 2011 and registered July 31, 2012 based on intent-to-use and a European Union application filed April 6, 2011 and registered September 8, 2011, for computer programs and software, software and data processing manuals, database management services, data processing training services, and software development services.

- U.S. Reg. No. 4,952,410 for S/4HANA, filed January 5, 2015 and registered May 3, 2016 based on use and use in commerce since May 2011, for computer programs and software, software and data processing manuals, educational services, and cloud computing services.

The registrations described above are valid and subsisting, and copies of each are attached hereto as Exhibit A.

*Defendant and its Infringing Conduct*

18.     As noted above, Defendant is an international software company, run by SAP's former CTO, that is both SAP's direct competitor and business partner. Like SAP, Defendant provides businesses with software platforms and consulting services to help maintain, operate, and manage their computer systems, databases, and networks. The two companies have numerous common customers, and have been involved in projects together for some of those customers, including companies headquartered in this district such as ConAgra Foods, Inc., Kraft Foods Group, Inc., The Boeing Company, Abbott Laboratories, and Exelon Corporation.

19.     The CEO of Defendant, Dr. Vishal Sikka, was an employee of SAP from 2002-2014, and its Chief Technology Officer from 2007-2014.

20.     During his tenure as SAP's CTO, Dr. Sikka was heavily involved with the teams that developed and promoted HANA, and indeed was involved in the naming of HANA.

21.     In May 2014, one month prior to SAP's annual customer conference, Dr. Sikka resigned from SAP.

22.     One month later, in June 2014 Dr. Sikka became Defendant's new CEO.

6

23.     As Defendant's CEO, Dr. Sikka now promotes his long tenure at and association with SAP, including in his online company profile, which reads (in part):

> In his 12 years at SAP, Dr. Sikka held several senior leadership roles including becoming SAP's first-ever CTO in 2007. As CTO, Dr. Sikka was responsible for overall technology architecture and ensuring coherence in SAP's product strategy. During that time and later when he joined the Executive Board of SAP, Dr. Sikka brought a strong focus on delivering innovation non-disruptively, simplifying customers [sic] landscapes, and delivering new and delightful user experiences.

> When Dr. Sikka joined the SAP Executive Board in February 2010, he brought this same focus to all of product development and was instrumental in building a culture of innovation at SAP; innovation became the focus and was at the heart of everything the company developed and delivered to customers.

A copy of that online profile is attached hereto as Exhibit B. Dr. Sikka's profile promotes his association not only with SAP in general, but specifically with SAP's HANA platform. For example, he describes Plaintiffs' "breakthrough in-memory data platform" HANA as "the fastest growing product in SAP's history."

24.     These and other explicit references to SAP and its HANA Marks in Defendant's advertising naturally lead customers to draw an association between Infosys, on the one hand, and SAP and HANA, on the other.

25.     Upon information and belief, Defendant recruited at least fourteen high-level SAP executives after Dr. Sikka became CEO of Defendant. Copies of news articles showing the former-SAP executives who are now employed in executive positions at Defendant are attached as Exhibits C-G. Upon information and belief, many of these individuals are involved in the development or marketing of MANA. Again, these facts reinforce the association in customers' minds between Infosys, on the one hand, and SAP and HANA, on the other.

26.     On or about April 28, 2016, Defendant announced the launch of its competing MANA product via a press release on its website, a copy of which is attached hereto as Exhibit

H.  According to that press release, MANA is "a platform that brings machine learning together with the deep knowledge of an organization, to drive automation and innovation – enabling businesses to continuously reinvent their system landscapes."  Moreover, according to that press release, Defendant "has already started working with a number of clients" on its MANA platform, including "a company with a large fleet of field engineers," "a major global telecommunications firm," and "a global food and beverage manufacturer."

27.     Upon information and belief, Defendant is relying on MANA as its principal platform to drive growth and margins for the company, and is investing millions of dollars into developing and promoting MANA in the hope that it will eventually generate billions of dollars in revenue for Defendant.  News sources report that Defendant has dedicated hundreds of engineers to the project, and hired numerous high-level programmers and software company executives to lead its MANA project.  Copies of these news sources are attached as Exhibits I-K.

28.     In addition, one day before the publication of that press release, on April 27, 2016, Defendant applied to register the marks MANA (U.S. App. Serial No. 87/015,845) and INFOSYS MANA (U.S. App. Serial No. 87/015,824) with the U.S. Patent & Trademark Office for a wide variety of goods and services, many of which are identical to or overlap with those set forth in Plaintiffs' registrations for its HANA marks, and the products and services in connection with which Plaintiffs use their HANA Marks – for example: computer programs and software for data processing and analytics and performing real-time business operations; internet services; research in the fields of computer programs and software; and software consulting services. Copies of Defendant's applications, which remain pending and have not yet been approved by U.S. Patent & Trademark Office, are attached hereto as Exhibit L.

29. Upon information and belief, Defendant already has begun advertising, offering for sale, and selling its products and services under the MANA mark in the United States, including in this district. More particularly, Defendant currently is marketing and selling products and services under the MANA mark to at least its largest customers, including ConAgra Foods and Kraft Foods, headquartered in this district, as well as Johnson Controls, Syngenta, Hermes Parcelnet, The Hershey Company, National Australia Bank, Microsoft and dozens of others according to various news reports attached as Exhibits J, M-N.

30. Defendant not only chose a mark for its new offering that is confusingly similar to HANA, but it also deliberately has sought to conflate its MANA products and services with Plaintiffs' HANA products and services. Upon information and belief, it has advertised MANA as a product that can be implemented as an add-on to optimize SAP's HANA. Defendant has also published a document online advertising itself as a HANA service provider, noting that "[w]e know from experience that SAP HANA can potentially have significant impact on your infrastructure and IT operations . . . Infosys is your trusted partner for all your SAP HANA technology challenges." A copy of this online document is attached as Exhibit O. Indeed, Defendant has a blog on its website dedicated to discussing Plaintiffs' HANA technology, including, for example, a May 19, 2016 post entitled "Building Business Value with SAP S/4HANA." A copy of this blog post is attached as Exhibit P. Furthermore, the President of Defendant, Rajesh Krishnamurthy, is described on Defendant's website as the "Global SAP practice leader for Infosys across industry groups." A copy of this profile is attached as Exhibit Q. Advertising statements like these further foster a mental association on the part of customers between Infosys, on the one hand, and SAP and HANA, on the other. That association enhances the likelihood of confusion arising from Defendant's adoption and use of MANA.

31.     After learning of Defendant's actual and intended use of MANA, Plaintiffs, on June 29, 2016, advised Defendant in writing of their ownership of and exclusive rights in their HANA Marks, and expressed concern that there may be "substantial similarity and relation between the goods and service on which the MANA and HANA marks are used."  Plaintiffs further noted the "phonetic similarity (HANA and MANA)," the potential "overlap in services offered under the respective marks," and SAP's relationship with Infosys including "Vishal Sikka's depth of involvement with SAP HANA as SAP's Chief Technology Officer."  A copy of this letter is attached as Exhibit R.

32.     Subsequent communications between Plaintiffs and Defendant did not resolve the parties' dispute, and Plaintiffs therefore requested that Defendant consider abandoning its use and intended use of the MANA mark in connection with its goods and services immediately.

33.     Because these communications were not productive, on August 25, 2016, SAP brought an action in a district court in Frankfurt, Germany seeking a temporary injunction prohibiting Defendant from using the MANA mark in the European Union, on the basis that Plaintiffs' HANA mark was highly distinctive and that there was a risk of confusion between the parties' HANA and MANA marks. On August 29, 2016, the court granted the relief sought by SAP in full, issuing the requested EU-wide injunction.  A copy of the Frankfurt court's order, along with a certified translation, is attached hereto as Exhibit S.

34.     Despite Plaintiffs' request, and with full knowledge of Plaintiffs' ownership of, and exclusive rights in and registrations for, their HANA marks, Defendant continues to advertise and sell its products and services under the MANA mark to customers in the United States.

35.     Defendant's foregoing acts have occurred in interstate commerce and in a manner affecting interstate commerce, including by advertising, promoting, offering for sale, and selling the products and services it offers bearing and in connection with the MANA mark online and throughout the United States, including in this district.

36.     Defendant has derived direct and indirect benefits and profits from its infringing and unlawful use of the MANA marks, at Plaintiffs' expense.  Defendant's actions have caused and will continue to cause Plaintiffs to suffer harm, including but not limited to lost sales, lost profits, and irreparable harm to goodwill and reputation, unless and until they are enjoined.

## CLAIMS FOR RELIEF

### COUNT I:
### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)

37.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1-36 as if fully set forth herein.

38.     The HANA Marks are well-known and distinctive, and are associated among relevant consumers with goods and services of the highest quality.

39.     Defendant's use of MANA in connection with goods and/or services identical and/or closely related to those goods and/or services provided under or in connection with Plaintiffs' federally-registered HANA Marks has caused and is likely to continue to cause confusion and/or to deceive consumers as to the source or sponsorship of Defendant's goods and services.  Consumers are likely to be misled into believing that Defendant's goods and services originate with SAP or are otherwise associated with SAP's goods and services.

40.     Defendant's conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Plaintiffs' prior rights, and with full knowledge that Defendant has no right,

11

license, or authority to use any of Plaintiffs' HANA Marks or any designations confusingly similar thereto.

41.     Defendant's acts are intended to reap the benefit of the goodwill associated with Plaintiffs' federally-registered HANA Marks and constitutes infringement of those marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

42.     Defendant's conduct has caused and is causing irreparable injury to Plaintiffs and, unless enjoined by this Court, will continue to both damage Plaintiffs and deceive the public.

43.     Plaintiffs have no adequate remedy at law.

## COUNT II:
## FEDERAL UNFAIR COMPETITION AND
## FALSE DESIGNATION OF ORIGIN
## <u>15 U.S.C. § 1125(a)</u>

44.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1-43 as if fully set forth herein.

45.     Plaintiffs' HANA Marks are well-known and distinctive, and are associated among relevant consumers with goods and services of the highest quality.

46.     Plaintiffs have established strong common law rights in their HANA Marks for and in connection with their in-memory database analytics platforms, and with related goods and services.

47.     Defendant's use of the MANA mark as described above is likely to cause confusion or mistake, or to deceive consumers and the public as to the affiliation, connection, or association of Defendant or its goods and services, or as to the origin, sponsorship, or approval of Defendant's goods and services.

48.      Defendant's conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Plaintiffs' prior rights, and with full knowledge that Defendant has no right,

12

license, or authority to use any of Plaintiffs' HANA Marks or any designations confusingly similar thereto.

49.     Defendant's acts are intended to reap the benefit of the goodwill that has been created in Plaintiffs' HANA Marks and constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.     Defendant's conduct has caused and is causing irreparable injury to Plaintiffs and, unless enjoined by this Court, will continue to both damage Plaintiffs and deceive the public.

51.     Plaintiffs have no adequate remedy at law.

**COUNT III:**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS**
**PRACTICES ACT**
**(815 ILCS 505/1 *et seq.*)**

52.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1-51 as if fully set forth herein.

53.     This action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*), which, in pertinent part, states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2

54.     Defendant has marketed and sold, and continues to market and sell, goods and services under the name MANA in Illinois commerce that are confusingly similar to those marketed and sold by Plaintiffs under the HANA Marks in Illinois commerce.  Defendant's use of MANA is likely to cause confusion, or to cause mistake, or to deceive Illinois customers as to

the affiliation, connection, or association of Plaintiffs' products and/or services, or to deceive Illinois customers as to the origin, sponsorship or approval by Plaintiffs of the Defendant's products and/or services.

55.     Defendant, with knowledge of the HANA Marks, intentionally and willfully marketed and sold, and continues to market and sell, their competing software products and services in Illinois commerce under the name MANA, in order to cause confusion, or to cause mistake, or to deceive Illinois customers as to the affiliation, connection, or association of Plaintiffs' products and/or services, or to deceive Illinois customers as to the origin, sponsorship or approval by Plaintiffs of the Defendant's products and/or services.

56.     Defendant's acts set forth above constitute unfair methods of competition and deception, fraud, false pretense, false promise, and misrepresentation, suppression, or omission of a material fact in violation of 815 ILCS 505/2.

57.     Defendant's conduct is causing immediate and irreparable injury to Plaintiffs and to its goodwill and reputation, and will continue to both damage Plaintiffs and deceive the Illinois public unless enjoined by this Court.

58.     Plaintiffs have no adequate remedy at law.

## COUNT IV:
## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq.*)

59.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1-58 as if fully set forth herein.

60.     Defendant's actions complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2 in that they are likely to cause confusion or misunderstanding as to the source, sponsorship or approval of Defendant's goods and services in Illinois.  Defendant's

deceptive conduct also creates a likelihood of confusion as to the affiliation, connection or association of Defendant and its goods and services sold under the name MANA with Plaintiffs' well-known goods and services sold under the HANA Marks in Illinois.

61.     Because Defendant had notice of Plaintiffs' prior use of and rights in their HANA Marks before Defendant's first use of MANA, Defendant willfully engaged in deceptive trade practices in violation of Illinois law.

62.     Defendant's willful and malicious conduct is causing immediate and irreparable injury to Plaintiffs and to its goodwill and reputation, and will continue to both damage Plaintiffs and deceive the Illinois public unless enjoined by this Court.

63.     Plaintiffs have no adequate remedy at law.

**COUNT V:**
**COMMON LAW UNFAIR COMPETITION**

64.     Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1-63 as if fully set forth herein.

65.     Defendant's conduct constitutes unfair competition in that such conduct: (a) is likely to cause members of the Illinois public and trade, and actual or potential customers of Plaintiffs, to believe that Defendant and its goods and services offered under the MANA mark are in some way sponsored by, affiliated with or otherwise connected to Plaintiffs and HANA's goods and services, when in fact they are not; and (b) enables Defendant to trade on and deprive Plaintiffs of the benefit of the goodwill in its HANA Marks in Illinois.

66.     Defendant's acts set forth above constitute palming off and unfair competition under Illinois State common law, as the acts amount to an intentional misappropriation of Plaintiffs HANA Marks in Illinois, as well as Plaintiffs' reputation and commercial advantage. As a result of its wrongful actions, Defendant will be unjustly enriched.

67.     Defendant's conduct is causing immediate and irreparable injury to Plaintiffs and to its goodwill and reputation, and will continue to both damage Plaintiffs and deceive the Illinois public unless enjoined by this Court.

68.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, as follows:

1.     That the Court preliminarily and permanently enjoin Defendant and its principals, parents, subsidiaries, affiliates, officers, directors, shareholders, agents, employees, representatives, attorneys, successors, and assigns, and all persons in active concert and participation with them or any of them, from:

a)   In connection with the advertising or sale of any products or services:

(i)     using or authorizing the use of (A) any mark that consists of or includes the term MANA, (B) any other imitations of Plaintiffs' HANA Marks, or (C) any other word, name, symbol, or device likely to cause confusion with Plaintiffs' HANA Marks;

(ii)     performing any act that can or is likely to mislead members of the public into falsely believing that (A) a product offered by Defendant is in any manner associated or connected with Plaintiffs, or sponsored, approved, or authorized by Plaintiffs, or (B) a product offered by Plaintiffs is in any manner associated or connected with Defendant;

b)   Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of Plaintiffs' rights in their HANA Marks; and

c)  Assisting or aiding any third party in engaging in or performing any of the activities referred to in subparagraphs (a) and (b) above.

2.  That Defendant be directed to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days of entry of such judgment a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the above.

3.  That Defendant be ordered to recall from all distribution channels and deliver up for impoundment and destruction, or show proof of destruction, of all products, packaging, labels, signage, advertising, promotional materials, or other materials in the possession, custody, or control of Defendant bearing or consisting of (i) any mark that consists of or includes the term MANA, or (ii) any other marks or symbols that are found to infringe Plaintiffs' HANA Marks, or that otherwise unfairly compete with Plaintiffs or its goods or services, or that are otherwise deceptive.

4.  That Plaintiffs be awarded monetary relief, including their actual damages, Defendant's profits, treble damages and increased profits as provided by federal law, including 15 U.S.C. § 1117 and at state and common law, including 815 ILCS 505/10a and 815 ILCS 510/3, arising out of Defendant's acts of trademark infringement, unfair competition, and false designation of origin, together with appropriate interest.

5.  Finding that this case constitutes an exceptional case and awarding Plaintiffs their costs in this civil action, including disbursements and reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. 1117, 815 ILCS 505/10a, and 815 ILCS 510/3.

6.  That Plaintiffs be granted any other, further, or different relief that this Court deems just and proper.

Dated: September 9, 2016


/s/ Richard T. McCaulley
Richard T. McCaulley

Richard T. McCaulley
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Fl.
Chicago, IL 60606
Tel: (312) 845-5500
richard.mccaulley@ropesgray.com

 Peter M. Brody (*pro hac vice* pending)
Andrew J. Sutton (*pro hac vice* pending)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue NW
Washington, D.C. 20002
Tel: (202) 508-4612
peter.brody@ropesgray.com
andrew.sutton@ropesgray.com

Evan Gourvitz (*pro hac vice* pending)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
evan.gourvitz@ropesgray.com

*Attorneys for Plaintiffs,*
*SAP SE and SAP America, Inc.*